[Civ. No. 26360. First Dist., Div. One. Aug. 27, 1971.]

JAMES DALE BARKER, a Minor, etc., et al.,
Plaintiffs and Appellants, v.
WAH LOW et al., Defendants and Respondents.

**COUNSEL**

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Stanley A. Ibler, Jr., for Plaintiffs and Appellants.

Hoge, Fenton, Jones & Appel, John L. Hendry, Russ & Benson and Richard H. McConnell for Defendants and Respondents.

**OPINION**

**SIMS, J.**—Plaintiffs, the widow and five surviving minor children of a patron of a drive-in restaurant, have appealed from separate summary judgments in favor of the owners and of the operator of the restaurant, respectively, in an action for the wrongful death of the patron. The record on the motion for summary judgment indicates that the patron received the injuries which resulted in his death, while waiting at the service window when he was crushed against the restaurant building by a car which lurched forward over a wooden barrier.

The plaintiffs contend that there was a triable issue of fact concerning whether the defendants were negligent in failing to protect the patron from the potentially harmful conduct of the defendants' other customers, and that, therefore, the court erred in granting a summary judgment. The owners and the operator by separate briefs assert that there was no triable issue

of fact, because the issue presented by the motion for summary judgment, the duty of the defendants, was an issue of law which the trial court properly resolved in their favor. A review of the facts in the light of applicable precedents reveals that the question of whether the owners and operator had fulfilled the general duty of care to a patron of the drive-in was, under the circumstances of this case, a question of fact. The judgments must be reversed.

Insofar as the owners and the operator of the drive-in restaurant are concerned[1] the plaintiffs alleged that they failed "to provide adequate bumper guards in an area where vehicles would be driving upon the premises at their invitation" and failed "to adequately direct vehicular traffic upon . . . [their] property . . . by failing to place signs directing traffic and warnings to vehicular traffic for the protection of business invitees within the area of travel of vehicles invited upon the premises by defendants."

The following facts are uncontroverted: On January 1, 1965, Lloyd Barker was a patron of Pepe's Drive-In, a restaurant in Gilroy, California, owned by defendant Lotus Bowl Corporation, and leased and operated by defendant Joe Arellano. Mr. Barker was standing at an outside service window at which patrons may make purchases without entering the building. Parking spaces, delineated by white lines, were provided so that patrons could park their cars close to and facing the building. Running parallel to the service window was a wide sidewalk bordered by raised wooden "bumper stops" forming the front end of the parking stalls. As Barker was waiting to be served, a car parked in one of the stalls immediately in front of the window moved forward over the wooden "bumper stops" pinning him against the wall, causing severe personal injuries which resulted in his death on January 7, 1965.

The attorney for the owners filed a declaration which asserted that the driver of the vehicle had answered a request for admissions as follows: "My vehicle was parked in front of Pepe's. I came out and started the car. When I pushed on the accelerator, it stuck to the floor and when I pulled the gear lever down to reverse, it hit low gear and lunged forward. I tried to put on the brakes to stop, but I had already hit the man in front of my car."

The attorney for plaintiffs filed a declaration in opposition which set forth matters which had been developed in depositions of the operator, of a representative of the owners, and of the wife of the driver. The first is that of defendant Joe Arellano which states that the parking stalls in front of

---

[1]The complaint contained a second cause of action, against the owner and operator of the vehicle involved. Neither of these persons is a party to the present appeal. The complaint also contained a third cause of action, which alleged that all named defendants were jointly and concurrently negligent.

the building pointed towards the building and that he served the customers at a service window on the side of the building facing the head-in parking, and that customers lined up along that side of the building. The deposition of Wah Low states that he knew people would be standing along the service window alongside the building and knew that if a car came forward over a parking stall it would hit the people standing in that vicinity. The deposition of Patricia Vargas, wife of Jose Vargas, states that when their car hit the barricade it didn't stop but went over it and hit Barker and pinned him against the wall.[2]

## I

In *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], in a controversy involving issues in part similar to those present in this case, the court noted: "The summary judgment procedure is drastic and should be used with caution so that it does not become a substitute for an open trial. This court in two recent cases has stated: 'Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor . . . and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.' (*Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417 . . .; *Joslin* v. *Marin Municipal Water Dist.*, 67 Cal.2d 132, 146-147. . . .) A defendant who moves for a summary judgment must prevail on the basis of his own affidavits and admissions made by the plaintiff, and unless the defendant's showing is sufficient, there is no burden on the plaintiff to file affidavits showing he has a cause of action or to even file counteraffidavits at all. A summary judgment for defendant has been held improper where his affidavits were conclusionary and did not show that he was entitled to judgment and where the plaintiff did not file any counteraffidavits. (*de Echeguren* v. *de Echeguren*, 210 Cal.App.2d 141, 146-149 . . .; *Southern Pac. Co.* v. *Fish*, 166 Cal.App.2d 353, 362 et seq. . . .)" (69 Cal.2d at p. 111. See also *Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603, 606-607 [69 Cal.Rptr. 20]; *Smith* v. *City of San Jose* (1965) 238 Cal.App.2d 599 [48 Cal.Rptr. 108]; and *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 49-50 [46 Cal.Rptr. 552].)

---

[2]In connection with their motion for a new trial plaintiffs submitted the declaration of Professor Ralph A. Moyer, an expert in the field of traffic design and management, stating that in his opinion a dangerous condition was created by defendants in the design of their business and that their placement of the business invitees constituted a dangerous and hazardous condition. This declaration was stricken on the motion of the operator, and it has not been considered on this appeal. The propriety of the ruling of the trial court was not made an issue on this appeal, and no opinion is expressed as to the admissibility of the proferred evidence.

## II

The plaintiffs alleged that the owners and operator were negligent in that they failed "to provide adequate bumper guards in an area where vehicles would be driving upon the premises at their invitation," and failed "to adequately direct vehicular traffic upon . . . [their] property . . . by failing to place signs directing traffic and warnings to vehicular traffic for the protection of business invitees within the area of travel of vehicles invited upon the premises by defendants." They rely on principles found in section 344 of the Restatement Second of Torts, which provides: "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the *accidental, negligent, or intentionally harmful acts of third persons or animals,* and *by the failure of the possessor to exercise reasonable care to* [¶] (a) *discover that such acts are* being done or are *likely to be done,* or [¶] (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise *to protect them against it.*" (Italics added.)

Comment "d" under section 344, provides in pertinent part: "A . . . possessor of land who holds it open to the public for entry for his business purposes is not an insurer of the safety of such visitors against the acts of third persons, . . . He is, however, under a duty to exercise reasonable care to give them protection. . . . There are . . . many situations in which the possessor cannot reasonably assume that a warning will be sufficient. He is then required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the likelihood that third persons . . . may conduct themselves in a manner which will endanger the safety of the visitor."

Comment "f" provides in part: "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know *or* have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, *or* his past experience, is such that he should reasonably anticipate careless . . . conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, . . ." (Italics added.)

The foregoing principles have been recognized and applied in this state. (See *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 124 [52 Cal.

Rptr. 561, 416 P.2d 793]; *Edwards* v. *Hollywood Canteen* (1946) 27 Cal. 2d 802, 809-810 [167 P.2d 729]; *Curreri* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d 603, 612-613; *Sorenson* v. *Hutson* (1959) 175 Cal.App.2d 817, 826-827 [346 P.2d 785]; *Dillon* v. *Wallace* (1957) 148 Cal.App.2d 447, 451 [306 P.2d 1044]; and *Winn* v. *Holmes* (1956) 143 Cal.App.2d 501, 504 [299 P.2d 944].)

Five days before plaintiffs' motion for a new trial was denied in this case, the court rendered its decision in *Rowland* v. *Christian, supra,* in which it ruled that the liability of an occupier of land should be determined in accordance with the provisions of section 1714 of the Civil Code.[3] The court concluded, "The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." (69 Cal.2d at p. 119. See also *Martin* v. *Barclay Distributing Co.* (1970) 13 Cal.App.3d 828, 831 [91 Cal.Rptr. 817]; and *Beauchamp* v. *Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 25 [77 Cal. Rptr. 914].) There is nothing in the cases last referred to which qualifies the principles first set forth in connection with the effect of an intervening act of a third person, upon the liability of a possessor of land. In *Martin* the plaintiff was "jostled" or "bumped" in a crowded foyer by a third person, and her finger was caught in a door as she raised her hand to maintain her balance. The question of the effect of the later decision on the determination of whether the existence of a duty is a question of fact or a question of law is discussed below.

III

The owners and the operator contend that the summary judgments were proper because there was no triable issue of fact. They assert that the only issue presented was an issue of law to be determined by the court, i.e., the existence or nonexistence of a duty of an invitor to protect his invitees from the unforeseeable negligent act of a third person, and that the trial court properly determined on the facts presented that there was no such duty.

Their position is epitomized in *Smith* v. *City of San Jose, supra,* as

---

[3]Civil Code section 1714 provides in part as follows: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care and skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself . . . ."

follows: ". . . in order to impose liability on the city, there must have been a failure to use reasonable care to have discovered that negligent acts of third persons were being done or were about to be done, and failure to use reasonable care to protect the public. (*Hunter* v. *Mohawk Petroleum Corp.*, 51 Cal.2d 439 . . . ; Rest.2d Torts, § 344; Rest.2d Torts, § 348.) The liability of the proprietor to protect against injury to an invitee from the act of another is based mainly on the fact that the landowner has notice of prior conduct from which he could reasonably anticipate that such injury might occur. (*Porter* v. *California Jockey Club, Inc.*, 134 Cal.App.2d 158, 160. . . .) In the absence of conduct to put the proprietor on notice to the contrary, a person is entitled to assume that others will not act negligently or unlawfully. (*Hunter* v. *Mohawk Petroleum Corp.,* supra*; Porter* v. *California Jockey Club, supra.*)" (238 Cal. App.2d at p. 602. In addition to the cases cited see *Shipley* v. *City of Arroyo Grande* (1949) 92 Cal.App.2d 748, 750-751 [208 P.2d 51].) Their case is buttressed by numerous cases from other jurisdictions in which, on somewhat related but not necessarily identical facts, it has been held as a matter of law that there was no duty on the possessor of land to protect his customer or invitee from the acts of the third person which immediately caused the injuries. (See *Mack* v. *McGrath* (1967) 276 Minn. 419, 424-428 [150 N.W.2d 681, 684-686]; *Weber* v. *City of New York* (1965) 24 App.Div.2d 618, 619 [262 N.Y.S.2d 222, 224], affd. (1966) 17 N.Y.2d 790 [270 N.Y.S.2d 759, 17 N.E.2d 839]; *Flanagan* v. *Anania* (S.Ct. Nassau County 1959) 196 N.Y.S.2d 431, 432; *Cunningham* v. *Pratt* (Okla. 1964) 392 P.2d 725, 728-729; *Safeway Stores, Incorporated* v. *Musfelt* (Okla. 1960) 349 P.2d 756, 758-759; *Schatz* v. *7-Eleven, Inc.* (Fla.App. 1961) 128 So.2d 901, 903-905; and *Watkins* v. *Davis* (Tex. Civ.App. 1957) 308 S.W.2d 906, 909 (writ ref. n.r.e.); but cf. *Johnson* v. *Hatoum* (Fla.App. 1970) 239 So.2d 22, 26-27 (1971) cert. dism. 244 So.2d 740; and *Gresser* v. *Taylor* (1967) 276 Minn. 440, 446-447 [150 N.W.2d 869, 873-874].)

In both *Weber* v. *City of New York, supra,* and *Safeway Stores, Incorporated* v. *Musfelt, supra,* the claimant was injured on a public sidewalk by a negligently operated motor vehicle, and unsuccessfully sought to establish concurrent negligence of the possessor of land because of the manner in which the latter had provided for vehicular ingress and egress to his premises. (See 24 App.Div.2d at p. 619 [262 N.Y.S.2d at p. 224]; and 349 P.2d at pp. 758-759.) In *Cunningham* v. *Pratt, supra,* the claimant was injured when struck by a car which was negligently operated on the parking lot of defendant's store. Her allegations that the defendant was negligent in designing the driveway so as to cause the motorist to

· strike the curb, lose control and strike her, were held insufficient (392 P.2d at pp. 728-729).

In the remaining four cases the claimant was injured when a vehicle entered into the defendant's store. The following statement adopted by two judges in *Schatz* v. *7-Eleven, Inc.* is representative of the conclusions and reasoning on which the respondents rely: ". . . it cannot be contended with any degree of reason or logic that the owner of a store, by permitting automobiles to park perpendicularly to the curb in front of his entrance, or by failing to erect an impregnable barrier between the entrance of his store and an adjacent area where motor vehicles are driven and parked, should have anticipated that automobiles will be negligently propelled over the curb and across the sidewalk into the entrance of his store. We are not unmindful of the obvious fact that at times operators lose control over the forward progress and direction of their vehicles either through negligence or as a result of defective mechanisms, which sometimes results in damage or injury to others. In a sense all such occurrences are foreseeable. They are not, however, incidents to ordinary operation of vehicles, and do not happen in the ordinary and normal course of events. When they happen, the consequences resulting therefrom are matters of chance and speculation. If as a matter of law such occurrences are held to be foreseeable and therefore to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter. Such occurrences fall within the category of the unusual or extraordinary, and are therefore unforeseeable in contemplation of the law." (128 So.2d at p. 904, but cf. Carroll, J., dissenting at p. 905. See also *Watkins* v. *Davis, supra,* 308 S.W.2d at p. 909; and *Flanagan* v. *Anania, supra,* 196 N.Y.S.2d at p. 432.)

In *Mack* v. *McGrath, supra,* the court followed the *Watkins* and *Schatz* case and reversed a judgment on a verdict which had awarded the vehicle operator contribution from the operator of a shopping center, despite evidence that over a period of five years two automobiles had gone over the curbs and struck buildings. The court pointed out, "To erect an impregnable barrier around all of the buildings would both obstruct normal pedestrian traffic and impose on the owners a burden completely out of proportion to the anticipated risk. We agree that liability cannot be predicated on the fact that out of the many thousands of vehicles which use parking areas in a normal way, one or two may occasionally jump the curb and expose the pedestrians as well as tenants to the remote possibility of injury." (276 Minn. at pp. 427-428 [150 N.W.2d at p. 686].)

The plaintiffs' contend that the foregoing precedents should be distinguished on their facts because in each the place and nature of the accident

was fortuitous and at random so that it was impossible to take preventive measures, whereas, in this case the operator and owner have invited customers to stand awaiting service at a fixed location adjacent to space provided for the operation and parking of motor vehicles, without providing adequate protection from what is generally acknowledged to be a recognized, although seldom occurring, risk. They also contend that insofar as a duty to protect against a specific risk depends on foreseeability, the question should be left for determination as a matter of fact. Support for this position is found in *Johnson* v. *Hatoum, supra,* which was also decided by a divided court. In that case the majority disapproved of the reasoning in *Schatz* v. *7-Eleven, supra,* and reversed a summary judgment for the defendant, in an action brought by a claimant who was struck by an automobile driven by another patron, while waiting at a designated food counter. The court stated, "In sum, it is our opinion that the circumstances of this case are such as to present a classic jury question and we believe that it was error to enter summary judgment. While, from these facts, a jury might deny recovery after a fullscale trial, it might, with equal justification, have concluded, among other things, that the defendant was negligent in failing to erect barriers; in failing to control vehicular traffic; in failing to erect warning signs and in designing the premises so that the unprotected counter space was immediately adjacent to an uncontrolled parking area. We think the jury would have been entitled to find as a matter of common sense and experience that the defendant knew, or should have known, that this was a dangerous condition which would visit injury upon a pedestrian patron whose attention was directed away from the danger." (239 So.2d at p. 27.)

Attention is therefore directed to the extent to which the courts may generally withdraw from the trier of fact the existence of a duty of care to protect from a particular risk.

## IV

In *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23], the court stated: "Determinations of the duty issue as a matter of law adversely to the plaintiff are particularly common in situations similar to that in the present case, in which the defendant's responsibility for the activities of third persons is involved. . . . Although in both of the foregoing situations it would be difficult to say that reasonable minds could not differ as to whether or not a duty should be imposed, the question was one of law for the court, and not for the jury, to decide." (43 Cal.2d at p. 67.) It is generally stated that duty is "entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court."

(Prosser, Torts (3d ed. 1964) p. 207. See also *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 741 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 237, fn. 3 [60 Cal.Rptr. 510, 430 P.2d 68]; *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 307-309 [29 Cal.Rptr. 33, 379 P.2d 513] [overruled on other grounds *Dillon* v. *Legg, supra,* 68 Cal.2d at p. 748]; *Beauchamp* v. *Los Gatos Golf Course, supra,* 273 Cal.App.2d 20, 32; *Galanis* v. *Mercury Internat. Ins. Underwriters* (1967) 247 Cal.App.2d 690, 695-696 [55 Cal.Rptr. 890]; *Canifax* v. *Hercules Powder Co., supra,* 237 Cal. App.2d 44, 55; *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 276-277 [40 Cal.Rptr. 812]; and *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 7-8 [31 Cal.Rptr. 847].)

In *Dillon* v. *Legg, supra,* the court observed, "The history of the concept of duty in itself discloses that it is not an old and deep-rooted doctrine but a legal device of the latter half of the nineteenth century designed to curtail the feared propensities of juries toward liberal awards. 'It must not be forgotten that "duty" got into our law for the very purpose of combatting what was then feared to be a dangerous delusion (perhaps especially prevalent among juries imbued with popular notions of fairness untempered by paramount judicial policy), viz., that the law might countenance legal redress for all foreseeable harm.' (Fleming, An Introduction to the Law of Torts (1967) p. 47.)" (68 Cal.2d at p. 734.)

The opinion later notes, "In order to limit the otherwise potentially infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable.

"In the absence of 'overriding policy considerations . . . foreseeability of risk [is] of . . . primary importance in establishing the element of duty.' (*Grafton* v. *Mollica* (1965) 231 Cal.App.2d 860, 865. . . . [Citations.]) As a classic opinion states: 'The risk reasonably to be perceived defines the duty to be obeyed.' (*Palsgraf* v. *Long Island R.R. Co.* (1928) 248 N.Y. 339, 344. . . .) Defendant owes a duty, in the sense of a potential liability for damages, only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent, in the first instance. [Citations.]" (68 Cal.2d at p. 739. See also *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d 232, 237, fn. 3.)

In *Dillon* v. *Legg* the court defined the duty of the court as determining "whether the accident and harm was *reasonably* foreseeable." (68 Cal.2d at p. 741.) It continued, "Such reasonable foreseeability does not turn on whether the particular plaintiff as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the

ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected." (*Id.*)

Certain criteria have developed in delineating the area of liability. In *Rowland* v. *Christian, supra,* after establishing the general principle of liability as found in section 1714 of the Civil Code (see fn. 2 above), the court continued, "A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (69 Cal.2d at pp. 112-113. See also *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d 232, fn. 3; *Galanis* v. *Mercury Internat. Ins. Underwriters, supra,* 247 Cal.App.2d 690, 696; *Wright* v. *Arcade School Dist., supra,* 230 Cal.App.2d 272, 278; and *Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1, 8.)

In *Smith* v. *City of San Jose, supra,* upon which respondents rely, the court stated, "To say that such an accident *could* happen is to state a mere possibility which is common to a multitude of situations. Eventuality alone does not create duty. There is no statement of boisterous conduct, of excitement, of prior occurrences of children running on the stairs, or of other conduct which, if existent, discovery procedure might have shown. [Citation.] The act may have been the single instance of an impulsive or careless child. To impose a duty of supervision of stairways merely because of the presence of children, without more, would place an unreasonable burden on proprietors." (238 Cal.App.2d at p. 603.) On the other hand, *Dillon* v. *Legg* indicates that "foreseeability does not turn on whether the particular defendant as an individual would have in actuality foreseen the exact accident and loss; . . ." (68 Cal.2d at p. 741.) In *Beauchamp* v. *Los Gatos Golf Course, supra,* the court observed, "It is true, of course, that the absence of other accidents is not proof per se that no dangerous condition existed. [Citations.]" (273 Cal.App.2d at p. 38.)

The guiding light appears to be that noted in *Schwartz* v. *Helms Bakery Limited, supra,* where the court, after reviewing the criteria for balancing risk against the imposition of duty, noted, ". . . courts may intervene to limit the discretion of juries to apply the standard of due care only when

reasonable minds could not differ as to the application of such standard." (67 Cal.2d at p. 238, fn. 3.)

The record in this case indicates that the owners designed and leased to the operator, and the operator operated, a facility which invites the latter's customers to position themselves in front of parking spaces which were separated from the place for serving the customers only by a wooden barrier. Reasonable men could believe it was necessary to have a barrier separating the waiting customers from those approaching, parking and leaving in vehicles. Reasonable men could believe that the barrier provided was inadequate. Reasonable men could believe that the possibility of a car jumping, lurching, or bolting forward because of mechanical failure, or negligence of the driver, although remote, was foreseeable, and that in balancing this possibility against the risk of harm to patrons assembled at the serving window, it would have been no inordinate burden on the owners or operators, or to the patrons, to have installed a more substantial barrier protecting that particular area of the premises. It is concluded that the court erred in determining that there were no triable issues of fact.

In *Curreri* v. *City etc. of San Francisco, supra,* the court noted, "It is recognized, as contended by respondents, that the City of San Francisco has no duty to provide curbs or other protective features throughout the City which would in all cases prevent negligent motorists from driving from the street onto the sidewalk and damaging property or injuring persons. (See *Shipley* v. *City of Arroyo Grande,* 92 Cal.App.2d 748 . . . [citations].)" (262 Cal.App.2d at p. 610.) Nevertheless, the court overturned the summary judgment for the city, because of the peculiar circumstances attendant to parking at right angles on a hill. The court said, "The trier of fact could be justified in concluding that the two to three-inch curb might be considered no protection to persons lawfully using the sidewalk and adjacent property. Parking on many of San Francisco streets is a hazardous procedure in itself. It is believed that reasonable persons may differ as to the type of protective measures, if any, that may be indicated on these streets. Whether a high curb, or angle parking, or a prohibition of parking, or elimination of right angle parking, or a barricade were precautions which should have been foreseen to have prevented the accident is, of course, unknown. However, under the circumstances, the trier of fact could reasonably conclude that the City by the omission of one or more of these or other precautionary measures maintained a dangerous condition as to the overall parking situation on Greenwich Street." (*Id.,* at p. 611.)

Furthermore, the relationship of foreseeability to the creation of a duty, as does the relationship of foreseeability to proximate cause, may

create a mixed question of law and fact. (See *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at p. 237, fn. 3; and *Curreri* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d 603, 612.) In *Canifax* v. *Hercules Powder Co.* the court qualified the right of a court to determine the existence of a duty as follows: ". . . *aside from questions of foreseeability,* existence of a duty is generally a question of law to be determined by the court and not the jury. [Citation.]" (237 Cal.App.2d at p. 55, italics added. See also *Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1, 7; and *Wright* v. *Arcade School Dist., supra,* 230 Cal.App.2d 272, 276-277.)

It has been suggested that since *Rowland* v. *Christian, supra,* has defined the duty of a possessor of land in general terms, the nature and extent of the duty under any particular circumstances is a matter for the jury. In *Beauchamp* v. *Los Gatos Golf Course, supra,* the court stated, "Under Civil Code sections 1708 and 1714 the jury has the burden of deciding not only what the facts are, but what any unformulated standard is of reasonable conduct of the ordinary prudent or reasonable person under like circumstances." (273 Cal.App.2d at p. 26.) The court added, " 'But the proper conduct of a reasonable person under particular situations may become settled by judicial decision or be prescribed by statute or ordinance.' (*Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581, 587. . . .)" (*Id.,* pp. 26-27.) It concluded, "We therefore conclude that *Rowland* v. *Christian, supra,* does not generally abrogate the decisions declaring the substantive duties of the possessor of land to invitees nor those establishing the correlative rights and duties of invitees." (*Id.,* p. 27.) It then reviewed various precedents with respect to the duties of a possessor of land and stated that they supported the nonsuit granted to the defendant by the trial court (*id.,* pp. 27-31). Nevertheless, it ultimately concluded as follows: "Under *Rowland* v. *Christian, supra,* we are impelled to conclude that the obvious nature of the risk, danger or defect under (1) *supra,* can no longer be said *per se* to abridge the invitation given by the possessor of land, or to derogate his duty of care, so as to make his liability solely a matter of law to be determined on a nonsuit. By that decision, this matter of law for the court is transmuted to a question of fact for the jury; namely, whether a possessor of land even in respect to the obvious risk has acted reasonably in respect to the probability of injury to an invitee; and whether or not the invitee used the property reasonably in full knowledge of any obvious risk entering into a subsequent injurious accident. [Citations.]" (*Id., at* pp. 33-34. See also *Martin* v. *Barclay Distributing Co., supra,* 13 Cal.App.3d at pp. 831-832.)

It is unnecessary to determine whether the foreseeability of physical

harm caused by the accidental, negligent or intentional acts of a third person on the property of a possessor of land should in all cases be left to the jury. It is sufficient to note then in this case the circumstances permit a finding that the injuries, and the resulting death for which the plaintiffs seek compensation, were occasioned by the defendants want of ordinary care or skill in the management of their property (see Civ. Code, § 1714). The chance that a vehicle would strike a patron at the service counter, unless precautions were taken, was foreseeable. Whether the precautions taken were adequate, and the extent of the hazards from which it was reasonable to require the possessors of the land to furnish protection, are questions of fact. ■ As stated in *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at page 244: "But just as we may not rely upon our private judgment on [these issues], so the trial court may not impose its private judgment upon a situation, such as this, in which reasonable minds may differ."

The judgments are reversed.

Molinari, P. J., and Elkington, J., concurred.